IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARITZA CORTES,<br><br>          Plaintiff,<br><br>     v.<br><br>UNIVERSITY OF MEDICINE AND<br>DENTISTRY OF NEW JERSEY,<br>MARTY WILT, JOHN GREMBOWICZ,<br>BETTY ANN GARDNER, STEVE<br>PAWLAK, MIKE MCMANUS, and<br>KEVIN SEYBOLD,<br><br>          Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No. 03-0312 (JBS)<br><br><br>**OPINION** |

APPEARANCES:

Greg L. Zeff, Esq.
Josephine M. Carabello-Patti, Esq.
FROST & ZEFF, ESQS.
430 Route 70 West
Cherry Hill, New Jersey 08002
     Attorneys for Plaintiff

Peter C. Harvey
Attorney General of New Jersey
     By:  Leslie M. Gore, D.A.G.
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
     Attorney for Defendants

**SIMANDLE**, District Judge:

     This employment discrimination case comes before the Court

upon Defendants' motion for summary judgment.  All discovery has

been completed, and the Court is called upon to assess which, if

any, of Plaintiff's many claims have evidentiary support

sufficient to be submitted to a jury at trial.  This motion

requires the Court to address issues of the statute of limitations under the state and federal statutes governing discrimination in the workplace, as well as the evidentiary standard necessary to maintain a claim of hostile work environment, retaliatory employment action, and punitive damages. For the following reasons, the motion for summary judgment will be granted in part and denied in part.

## I.  BACKGROUND

This matter arises out of the employment relationship between Plaintiff, Maritza Cortes, and Defendant, The University of Medicine and Dentistry of New Jersey ("UMDNJ").  On December 21, 2001, Plaintiff was terminated by UMDNJ for committing violations of UMDNJ policies and procedures, including causing damage to UMDNJ property.  Plaintiff alleges that her termination was in retaliation for her various complaints about sexual harassment and gender/racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq., and various other civil rights statutes.

Plaintiff, a Hispanic female, was employed by UMDNJ as an Emergency Medical Technician ("EMT") at the Camden Division. UMDNJ is the State of New Jersey's health sciences university and is comprised of eight educational units located on several campuses throughout New Jersey.  UMDNJ also operates many health

2

care facilities and services throughout the State, among these is the University Hospital Emergency Medical Services, Camden Division.

On December 21, 2001, Plaintiff was terminated by UMDNJ after an investigation of her conduct and credibility relating to events that occurred on November 28, 2001.  UMDNJ determined that Plaintiff's conduct on this date violated the clear policies of the Emergency Medical Services Department ("EMS") and warranted her termination from employment.  UMDNJ's investigation revealed that Plaintiff was driving one of only two ambulances that were available to the City of Camden during her shift.  Defendants allege that, at approximately 4:00 a.m., Plaintiff drove her unit off the paved surface and into a debris-strewn vacant lot, remote from the road, where the unit became immobile.  All EMS Camden Division vehicles are equipped with the ALLSAFE E-90 computer system.  The system for the unit operated by Plaintiff on November 28, 2001 recorded what happened to the unit as well as the actions taken by Plaintiff while in control of the emergency vehicle.  The manner in which the vehicle was treated by Plaintiff was found to be in violation of departmental policies and resulted in damage to the vehicle, requiring a tow truck to extract the unit and remove it from the area.

Plaintiff reported that she had been flagged down by a pedestrian who indicated that someone was calling for help from

the vacant lot.  Plaintiff's version of what occurred, however, apparently did not coincide with the investigation nor were her actions in compliance with EMS policies and procedures for responding to distress calls.  In addition, Plaintiff's partner, Melanie Layton, withdrew her original report which had supported Plaintiff's version of events for a revised report which indicated that the pair had not been flagged down by a pedestrian, as Plaintiff reported.  Plaintiff contends that Steve Pawlak, the operations coordinator at EMS, instructed Layton to change her story in order to avoid termination.  Nevertheless, Ms. Layton, a white female, was terminated as well as a result of the events that occurred on November 28, 2001.

On June 26, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was terminated from her employment with UMDNJ in retaliation for reporting several isolated incidents of harassment that occurred between December 1999 and June 2001. After the completion of an investigation, the EEOC issued a finding of no probable cause.

Plaintiff subsequently filed suit on January 24, 2003 against UMDNJ; Marty Wilt, Chief of Emergency Medical Services; John Grembowicz, Associate Director of Emergency Medical Services; Betty Ann Gardner, Training Supervisor for Emergency Medical Services; Steve Pawlak, Emergency Medical Services

4

Coordinator; Mike McManus, a former Emergency Medical Technician; and Kevin Seybold, a former Emergency Medical Technician.

After Defendants filed their motion for summary judgment, Plaintiff subsequently withdrew Counts I (violation of due process under 42 U.S.C. § 1983), III (civil rights violations under 42 U.S.C. § 1985), and IV (civil conspiracy) of her Complaint.  In addition, Plaintiff withdrew her claims for individual liability under Count II (violation of equal protection under 42 U.S.C. § 1983).

Oral argument was held on January 5, 2005.  At that time, Plaintiff's counsel withdrew the remainder of Count II of the Complaint.  Therefore, the Court is called upon to address Defendants' motion for summary judgment with respect to the following remaining claims: violation of the New Jersey Law Against Discrimination (Count VI); violation of the New Jersey Constitution (Count VII); Title VII national origin and sex discrimination violations (Count VIII); Title VII retaliation (Count IX); and violation of the First Amendment under 42 U.S.C. § 1983 (Count X).[1]

## II.  **DISCUSSION**

A.  Summary Judgment Motion Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and

---

[1]Plaintiff's Complaint never contained a Count V.

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

6

Country Floors v. Partnership of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991)(reviewing district court's grant of summary judgment in a trademark action); Lucent Info. Manage. v. Lucent Tech., 986 F. Supp. 253, 257 (D.N.J. 1997)(granting summary judgment in favor of telecommunications provider in trademark action), aff'd, 186 F.3d 311 (3d Cir. 1999); Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989), cert. denied, 493 U.S. 1023 (1990).  However, where the nonmoving party bears the burden of persuasion at trial, as plaintiff does in the present case, "the burden on the moving party may be discharged by 'showing' –– that is, pointing out to the district court –– that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp., 477 U.S. at 325.

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

B.    <u>Plaintiff's NJLAD Claim (Count VI)</u>

Plaintiff sets forth, in Count VI of her Complaint, a cause of action under the NJLAD for discrimination against her on the basis of sex and national origin and for retaliation against Plaintiff for reporting the alleged discriminatory practices of Defendants.  The Court will now address Plaintiff's NJLAD claim as it relates to her allegations of discrimination and a hostile work environment; the retaliation component of Plaintiff's cause of action will be addressed later in this Opinion.  Defendants move for summary judgment, first, on the basis that allegations of NJLAD violatory acts prior to January 24, 2001 are time barred.

In <u>Montells v. Haynes</u>, 627 A.2d 654 (N.J. 1993), the New Jersey Supreme Court established a two year statute of limitations for all claims brought under the NJLAD after July 23, 1993.  Generally, this statute of limitations begins to run when the adverse employment decision is made and communicated to the plaintiff.  Here, Plaintiff filed her Complaint on January 24, 2003.  Defendants contend that many of the allegations contained therein fall outside the statute of limitations period, including: (1) Plaintiff's allegation that she was evaluated after her probationary period by Mike McManus on December 17, 1999 (Compl. at ¶¶ 23-24); (2) Plaintiff's allegation that some unknown person placed a clipping from an article in her employee

8

mailbox on February 17, 2000 which criticized persons who spoke a foreign language in the presence of others (<u>Id</u>. at ¶¶ 35-37); (3) Plaintiff's allegation that some unknown person placed a wrapped and unused tampon in her employee mailbox on July 3, 2000 (<u>Id</u>. at ¶ 38); (4) Plaintiff's allegation that she was denied admittance to various EMS committees in December 1999 (<u>Id</u>. at ¶¶ 25-33); (5) Plaintiff's allegation that she was the subject of derogatory comments made by Mike McManus and Kevin Seybold on September 10, 2000 (<u>Id</u>. at ¶¶ 39-42); and (6) Plaintiff's allegation that she was struck by an ambulance driven by her partner, Dominik Pietra, on October 25, 2000 (<u>Id</u>. at ¶¶ 43-44).  Thus, Defendants argue that these allegations must be dismissed.  Plaintiff, however, asserts that her claims are not time-barred because she is able to avail herself of the protections of the continuing violation theory.

In <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363, 380 (1982), the Supreme Court held that when a plaintiff challenges more than just one incident of unlawful conduct, or an unlawful practice that continues into the limitations period, the complaint is timely filed.  The actual violations must be continuing, however, and not merely the effects of the prior violation.  <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 257 (1980).

The continuing violation theory permits a plaintiff to pursue a claim for discriminatory conduct that started before the

filing period if she can demonstrate that the act is part of an ongoing practice or pattern of discrimination.  West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).  To demonstrate a continuing violation, Plaintiff must show: (1) that at least one discriminatory or harassing act occurred within the 300 day period[2]; and (2) that the harassment or discrimination represents a continuing pattern, or more than the occurrence of isolated or sporadic acts of intentional discrimination.  West, 45 F.3d at 754-755.

In Berry v. Board of Supervisors of Louisiana State University, 715 F.2d 971, 981 (5th Cir. 1983), the Fifth Circuit set forth the following three factors for determining whether a plaintiff has demonstrated a continuing violation: (1) subject matter; (2) frequency; and (3) degree of permanence.  The first factor is a consideration of whether the alleged acts are composed of the same type of discrimination.  Id.  The frequency factor considers whether the alleged conduct concerns repeated actions, or merely isolated events, such as a single, less preferable work assignment or an unfavorable employment decision. Id.  Finally, in regard to the permanence factor, a court may evaluate the allegedly unlawful act in terms of whether the

---

[2]To avoid dismissal, Plaintiff must have filed her complaint with the EEOC within 300 days of the Defendants' last discriminatory action against her.  As New Jersey is a "deferral state," the relevant time period is 300 days, not 180, as Defendants argue.  See discussion in Part C.1, below.

employee should have expected the adverse consequences of the action to remain in existence.  <u>Id</u>.  Although these factors are not binding on this Court, they have previously been relied on by the Third Circuit[3] and very closely match the requirements of <u>West</u>.  In applying the <u>Berry</u> factors, the Third Circuit considers the "degree of permanence" to be the most important element.  <u>Cowell v. Palmer Township</u>, 263 F.3d 286, 292 (3d Cir. 2001).  In evaluating this factor, courts should focus their inquiry on "whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate."  <u>West</u>, 45 F.3d at 755 n.9.  Courts should also consider subject matter; whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation and frequency; whether the acts are recurring or more in the nature of isolated incidents.  <u>Cowell</u>, 263 F.3d at 292.

In <u>West</u>, the Third Circuit described a "natural affinity" between hostile work environment claims and the continuing violation theory, but cautioned, as did the court in <u>Berry</u>, that

---

[3]<u>See</u> <u>e.g.</u>, <u>Cowell v. Palmer Township</u>, 263 F.3d 286, 292 (3d Cir. 2001); <u>Rush v. Scott Speciality Gases, Inc.</u>, 113 F.3d 476, 481-82 (3d Cir. 1997)(noting that <u>Berry</u> is the "leading case" in connection with the continuing violation theory); <u>West v. Philadelphia Electric Co.</u>, 45 F.3d 744, 755 n.9 (3d Cir. 1995).

11

isolated or single incidents of harassment are insufficient to demonstrate a hostile environment.  45 F.3d at 755.

Defendants argue, first, that Plaintiff does not allege truly discriminatory acts, asserting that her complaints are gender neutral and not race-based.  However, of the various acts of which Plaintiff complains, three of the alleged incidents could be described as arguably based on gender or race: the language barrier article placed in Plaintiff's employee mailbox (February 17, 2000), the tampon placed in Plaintiff's employee mailbox (July 3, 2000), and the offensive comments made by Defendants McManus and Seybold (September 10, 2000).  Each of these incidents, however, separately occurred outside of the statute of limitations period for a claim under the NJLAD and are thus time barred.  Moreover, the continuing violations theory offers Plaintiff no refuge here.  The acts alleged amount to nothing more than isolated or sporadic occurrences perpetrated by others in the workplace, many of whom acted anonymously.  Indeed, the only point of commonality among those acts is that they were directed at Plaintiff.  Thus, Plaintiff's argument that this is a case in which the continuing violation theory insulates her claim from dismissal on statute of limitations grounds is incorrect. The Court will grant summary judgment dismissing all claims under the NJLAD occurring prior to January 24, 2001.

With respect to Plaintiff's contention of a hostile work environment, Defendants further argue that Plaintiff has failed to establish harassment that was pervasive and regular, thereby requiring this Court to dismiss those claims as well.  A hostile work environment exists when a workplace is permeated with discriminatory intimidation, ridicule and insult so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment.  Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993).  Conduct that is not sufficiently severe or pervasive to create an objectively hostile or abusive environment is not actionable.  Id. at 21.  Incidents of harassment are pervasive if they occur in concert or with regularity.  See Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990).  In determining if a work environment is hostile or abusive, courts look to the totality of the circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interferes with the victim's work performance.  Pittman v. Correctional Healthcare Solutions, Inc., 868 F. Supp. 105, 108 (E.D. Pa. 1994)(citing Harris, supra.)  In addition, in order to establish vicarious liability of an employer for the actions of a plaintiff's coworkers, the plaintiff must show that the employer failed to provide a reasonable avenue for complaint or was aware

13

of the alleged harassment and failed to take appropriate remedial action.  See Westen v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001).  The employer cannot be held liable when it responds in a manner which stops the harassment.  Id.

Plaintiff's allegations, even when considered in the light most favorable to Plaintiff, do not appear to amount to harassment that was either pervasive or regular.  Moreover, each of the incidents alleged by Plaintiff were investigated by UMDNJ and did not recur thereafter, which supports, as Defendants maintain, the argument that UMDNJ, as employer, cannot be held liable for any such harassment.

The only incident alleged by Plaintiff occurring within the applicable statute of limitations was that involving the motorcycle Plaintiff used as part of the bike team.  (Compl. at ¶¶ 53-55.)  This incident occurred on June 30, 2001, approximately six months before Plaintiff was terminated.  Moreover, despite some scattered mishaps, the only incident of significance alleged to be intentionally directed at Ms. Cortes was the offensive comments of McManus and Seybold on September 10, 2000.[4]  On that date, Plaintiff alleges she overheard Defendants McManus, Seybold and other coworkers discussing her

_____

[4]The Court notes that this incident occurred while Plaintiff was waking from sleep on a couch in a workplace break room.  It is not clear that either McManus or Seybold realized Plaintiff was present.  (Plaintiff's Exhibit J. at 3.)

work relationship with Randy Bolton, another EMT for the company. Plaintiff maintains that McManus and Seybold stated that Plaintiff's work relationship with Bolton was good because "Plaintiff was on her knees sucking Bolton's dick." (Compl. at ¶ 8.) McManus then began referring to Plaintiff's buttock as a "fat ass." (Id.) Such discrete, isolated remarks, in which no supervisor participated, while repugnant to a civil workplace, simply cannot suffice to carry Plaintiff's burden of showing that she suffered incidents of harassment that were regular and in concert with one another. The Court is aware that this allegation was reviewed by UMDNJ's AA/EEO Office, which issued a probable cause determination and recommended that McManus and Seybold be disciplined. (Plaintiff's Exhibit J.) Plaintiff alleges that, despite this, no disciplinary action was taken against either men. (Compl. at ¶ 42.) While this might suggest that these Defendants' conduct was condoned by management, this incident occurred on September 10, 2000 and thus falls, as discussed above, outside the statute of limitations imposed by the NJLAD, thereby rendering it an improper basis for Plaintiff's hostile work environment claim. Thus, for this reason as well, Plaintiff's discrimination and hostile work environment claims under the NJLAD must be dismissed.

C.   <u>Plaintiff's Title VII Claims (Counts VIII and IX)</u>

Defendants next contend that Plaintiff's Title VII claims are limited to those allegations raised in her EEOC complaint and those that have been timely filed.

1.   <u>Time Limitations</u>

Title VII of the Civil Rights Act of 1964 prohibits discriminatory practices by employers based on an employee's race and sex.  42 U.S.C. § 2000e-2, <u>et</u> <u>seq</u>.  Before a Title VII claim may be maintained in federal court, however, a charge must be filed against a party with the EEOC.  <u>Sandom v. Travelers Mortgage Services, Inc.</u>, 752 F. Supp. 1240 (D.N.J. 1990).

"The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 398-99 (3d Cir. 1976), <u>cert. denied</u>, 429 U.S. 1041 (1977).  Thus, a subsequent civil action may only encompass forms of discrimination similar or related to those filed in the EEOC charge.  <u>Jenkins v. Blue Cross Mutual Hospital Insurance Inc.</u>, 538 F.2d 164, 167 (7th Cir. 1976), <u>cert. denied</u>, 429 U.S. 986 (1976).

Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit.  <u>National Railroad</u>

Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made.  Id.  The limitation for filing charges with the EEOC depends upon the existence of a state or local agency to enforce a statute or ordinance against employment discrimination.  In a state or locality without such an agency, a charge must be filed with the EEOC within 180 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1).  In a state or locality with such an agency, a charge must be filed with the EEOC within 300 days of the alleged discrimination or within thirty days of notice of termination of state or local proceedings, whichever period expires first.  Id.  Moreover, if an individual files a charge with the EEOC without first exhausting appropriate state or local administrative remedies, the EEOC must defer action on the charge for sixty (60) days or until the termination of state or local proceedings, whichever occurs first.  42 U.S.C. § 2000e-5(c), (d).  A claim is time barred if it is not filed within these time limits.  National Railroad Passenger Corp., 536 U.S. at 109.

Defendants argue that because many of the allegations listed in Plaintiff's Complaint do not fall within the 180 day filing period required under Title VII, these claims must be dismissed. New Jersey, however, is a "deferral state" and, as such, the relevant time period is not 180 days, but 300.  Pursuant to 42

U.S.C. § 2000e-5(c), the EEOC must refer complaints arising in New Jersey to the New Jersey Division on Civil Rights.  Due to the existence of this deferral agency, a plaintiff's complaint is thus timely filed if received by the EEOC within 300 days from the date of the alleged violation.  Bishop v. New Jersey, 2004 WL 25264 (3d Cir. 2004); Gona v. College of Medicine and Dentistry of New Jersey, 1985 WL 391 (D.N.J. 1985).  Plaintiff filed her complaint with the EEOC and the New Jersey Division on Civil Rights on June 26, 2002.  (See Plaintiff's Ex. N.)  As noted on the EEOC complaint form, the Defendants' last act of alleged discrimination was Plaintiff's termination on December 21, 2001.  Since Plaintiff's complaint with the EEOC and the New Jersey Division on Civil Rights was well within 300 days of the last discriminatory action taken against her, her Complaint is timely under Title VII.

   Defendants further contend that Plaintiff's Title VII claims are limited to the allegations raised in her EEOC complaint.  However, Defendants have not stated which, if any, of her civil action allegations are not encompassed by this.  Plaintiff maintains that all of her civil action allegations derive from those set forth in her EEOC complaint, in which Plaintiff states that she was subject to sexual harassment, discrimination on the basis of her sex and national origin, discharge on the basis of her sex and national origin and retaliation for complaining about

18

discrimination.  (Plaintiff's Exhibit N.)  This Court agrees that the allegations of Plaintiff's Complaint mirror those detailed in her EEOC charge and therefore form the basis for a proper Title VII claim against Defendant UMDNJ.[5]

    2.   <u>Title VII's Claims Against Individual Defendants</u>

Defendants argue next that Plaintiff's claims under Title VII against the individual Defendants must be dismissed because individuals may not be held liable under Title VII.  Title VII makes it unlawful for an "employer" to discriminate.  42 U.S.C. § 2000e-2(a)(1).  Moreover, an "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."  42 U.S.C. § 2000e(b).

The Third Circuit has declined to extend liability under Title VII to individuals, joining what it has called the "clear majority" of other circuits which have held that the term "employer" as used in Title VII does not encompass individual employees.  <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061, 1077-78 (3d Cir.) (en banc), <u>cert.</u> <u>denied</u>, 521 U.S. 1129 (1997).  In <u>Sheridan</u>, the Third Circuit concluded that Congress

---

[5]Defendant UMDNJ has not raised in this summary judgment motion any objections to Plaintiff's Title VII national original and sex discrimination claim (Count VIII) other than those discussed above.  Although this Court has determined that this Title VII claim survives summary judgment as to timeliness and content, it renders no disposition on the merits at this time and Count VIII may therefore proceed.

did not intend to hold individuals liable under Title VII.  Id.
at 1078.  In response to the Third Circuit's clear holding,
courts within the District of New Jersey have extended the
holding of Sheridan to prohibit individual liability brought
under Title VII.  See e.g., DeJoy v. Comcast Cable Communications
Inc., 941 F. Supp. 468, 474-75 (D.N.J. 1996) (holding that
employees could not be held individually liable under ADEA or
ADA, given that workers are not individually liable under Title
VII and Title VII, and ADA and ADEA share the same basic
purpose).  Plaintiff's Title VII claims against all individual
Defendants are not permitted by Title VII and will be dismissed.
Thus, this Court now finds that Plaintiff's Title VII claims may
proceed only as against Defendant UMDNJ.

D.   Plaintiff's Retaliation Claims

     Counts VI, VII, and IX of Plaintiff's Complaint allege,
among other things, that Plaintiff was subjected to retaliation
for reporting discrimination in violation of the NJLAD and Title
VII.  Defendants argue that Plaintiff's retaliation claims must
be dismissed because she is neither able to make a prima facie
case of retaliation nor show that Defendants' legitimate business
decisions, including her termination, were a pretext for
discrimination.

     Title VII prohibits employment discrimination because of
race, color, religion, sex or national origin.  Similarly, the

NJLAD prohibits such discrimination.  The analysis which is applied in Title VII claims is equally applicable to actions brought under other civil rights statutes, see Lewis v. University of Pittsburgh, 725 F.2d 910 (3d Cir. 1983), cert. denied, 469 U.S. 892 (1984), and thus the Title VII analysis applies to claims brought under the NJLAD as well.  See Abrams v. Lightolier, Inc., 50 F.3d 1204, 1212 (3d Cir. 1995).

Plaintiff maintains that Defendants have retaliated against her in violation of Title VII and the NJLAD after she reported discriminatory conduct.  The anti-retaliation section of Title VII provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must prove: (1) that she was engaged in a protected activity known to the employer; (2) that she was thereafter subjected to an adverse employment decision by the employer; and (3) that there was a causal link between the protected activity and the adverse employment decision.  Woodson v. Scott Paper Co., 284 F.3d 913, 920 (3d Cir. 1997).  To show the requisite causal link, the plaintiff must

present evidence sufficient to raise the inference that her
protected activity was the likely reason for the adverse action.
Ferguson v. E.I. DuPont de Nemours and Co., 520 F. Supp. 1172,
1200 (D. Del. 1983).  Once the plaintiff succeeds in establishing
her prima facie case, the burden of production shifts to the
defendant to articulate some legitimate, non-discriminatory
reason for its actions.  McDonnell Douglas v. Green, 411 U.S.
792, 802 (1973).  If the defendant is able to successfully
articulate such a reason, then the burden shifts back to the
plaintiff to show that the defendant's non-discriminatory reason
for the action was pretextual, and that the real reason for the
action was unlawful discrimination.  Id. at 802-04.  The
plaintiff's ultimate burden in a retaliation case is to convince
the factfinder that retaliatory intent had a determinative effect
on the employer's decision.  Shaner v. Synthes (USA), 204 F.3d
494, 501 (3d Cir. 2000).

Defendants argue principally that Plaintiff fails to set
forth a prima facie case of retaliation, specifically contending
that Plaintiff's allegations (excluding Plaintiff's actual
termination, which Defendants concede clearly constitutes an
adverse employment action) do not rise to the level of an adverse
employment action.  To state a prima facie case of retaliatory
discrimination based upon race and gender under Title VII, a
plaintiff must allege that her employer took an adverse

employment action against her which was motivated by race and gender.

The Third Circuit has defined an "adverse employment action" as an action that "alters the employee's compensation, terms, conditions, or privileges of employment." Calloway v. E.I. DuPont De Nemours and Co., 2000 WL 1251909 *8 (D. Del. 2000). See also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).  Thus, while a discharge or a refusal to hire would be actionable adverse employment actions, "when one goes beyond that, the conduct must be serious and tangible enough to materially alter an employee's terms and conditions of employment or adversely affect her status as an employee." Id.  "Not everything that makes an employee unhappy 'qualifies as [an adverse employment action], for [o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" Id. (internal citations omitted).  Indeed, the United States Supreme Court had observed that a tangible employment action "in most cases inflicts direct economic harm." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). Moreover, the New Jersey Appellate Division has held that, generally, harassment alone is not an adverse employment action. Shepherd v. Hunterdon Developmental Center, 765 A.2d 217 (N.J. Super. Ct. App. Div. 2001).

23

Plaintiff makes the following major allegations of retaliation: (1) at some unknown period of time, the tires of her personal vehicle and ambulance were slashed by some unknown person (Compl. at ¶ 43(l)); (2) on March 26, 2001, the lug nuts on her ambulance were loosened by some unknown person (Id. at ¶ 43(j)); (3) on June 30, 2001, the wires to the electric bike she intended to use were cut by some unknown person (Id. at ¶¶ 53-55); (4) in or about February or March of 2001, the oxygen tanks she intended to use in responding to a respiratory emergency were emptied by some unknown person (Id. at ¶ 43(f)); (5) on March 17, 2001, an unnamed co-worker locked her out of the station in order to allegedly make her late for work (Id. at ¶ 43(g)); (6) on three occasions, March 22, 2001; March 27, 2001; and April 2, 2001; Plaintiff was told that her charts were incomplete (Id. at ¶ 43(h)); and (7) Plaintiff believed that some of her co-workers no longer wished to work with her at some unspecified time period (Id. at ¶ 43(k)).  These allegations, however, simply do not amount to an adverse employment action sufficient to maintain a cause of action under the requisite standards imposed by Title VII or the NJLAD.  None of these acts, though troubling, rise to the level of serious and tangible conduct that materially alters Plaintiff's terms and conditions of employment nor are they capable of inflicting direct economic harm.  Moreover, there is absolutely no evidence that any of the allegations have anything

24

to do with Plaintiff's race or gender.  None of these pre-termination acts can constitute "adverse employment action," and none is arguably related to Plaintiff's race or gender, so none can form the basis of Plaintiff's retaliation claims.

Plaintiff, however, contends that her discharge itself was an act of retaliation by her former employer.  Indeed, Plaintiff maintains that she is able to demonstrate that Defendants retaliated against her for reporting the sex and national origin discrimination she alleges she faced while employed by UMDNJ and that a material fact exists as to whether Defendants terminated Plaintiff because she complained about facing discrimination. This Court agrees.

As to Plaintiff's termination, Defendant UMDNJ concedes that Plaintiff has established the elements of a _prima_ _facie_ case of retaliation in that she suffered that specific adverse employment action.  Defendant argues, however, that it has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff, namely that Plaintiff was terminated for violating UMDNJ's rules and procedures on the morning of November 28, 2001.

On November 28, 2001, Plaintiff is alleged to have driven her assigned ambulance into a debris-strewn vacant lot, where the vehicle became immobile.  Instead of immediately reporting the incident to headquarters, Plaintiff spent over an hour trying to free the vehicle on her own.  During this time, Plaintiff

25

received a dispatch to respond to an emergency.  Plaintiff did
not advise the communications center that her vehicle was
immobile, but instead, according to UMDNJ, misled the
communications center to believe that her partner was ill which
caused them to be unable to respond to any emergencies.
Plaintiff and her partner prepared conflicting reports of what
had occurred and both were later terminated for cause.
Defendants contend that Plaintiff fails to establish a prima
facie case because she cannot demonstrate that she performed her
job in a satisfactory manner (instead, she jeopardized patient
care) and that her failure to do so ultimately led to her
termination.  Moreover, Defendant UMDNJ argues that this
articulation of a legitimate, non-discriminatory reason for the
employment action taken against Plaintiff, Plaintiff must now
point to some evidence, direct or circumstantial, from which a
fact-finder could reasonably either (1) disbelieve the employer's
articulated legitimate reasons, or (2) believe that an indigenous
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action.

        Plaintiff, however, disputes Defendant's characterization of
the events of November 28, 2001 and argues that a genuine issue
of material fact exists with respect to Defendant's articulated
non-discriminatory reason for her discharge, as she maintains
that Defendant terminated Plaintiff because she complained about

being discriminated against based on her race and gender at
UMDNJ.

While Defendant asserts that Plaintiff was terminated for
violating UMDNJ's rules and procedures, John Grembowiec,
associate director of EMS Operations at UMDNJ University
Hospital, EMS Department, testified at his deposition that other
employees had committed similar infractions in the past but had
been allowed to return to work through a stipulation agreement,
even where they had falsified reports in an attempt to conceal
their actions from UMDNJ. (Plaintiff's Ex. K, Deposition of John
Grembowiec, 10:22-14:3.) Plaintiff thus argues, and this Court
agrees, that a reasonable jury could conclude that Defendant's
proffered nondiscriminatory reason for terminating her is merely
pretextual. Whether UMDNJ's decision to terminate Ms. Cortes is
based upon a pretextual reason, in which the true reason was
discrimination based on race and/or gender, or due to a motive of
retaliation against her for filing previous complaints of
discrimination, presents a genuine issue of material fact
requiring resolution by a jury. Thus, this Court declines to
enter summary judgment in favor of Defendant UMDNJ on Plaintiff's
contention that her termination was an act of retaliation by
UMDNJ.

Plaintiff has plead her NJLAD retaliation claim against all
Defendants, that is, against both UMDNJ and the individually

named Defendants.  While the Third Circuit has clearly foreclosed any possibility of individual liability under Title VII, the NJLAD does contain a separate provision which expressly contemplates individual liability for those who "aid or abet" an employer's unlawful employment actions.  Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999).  This provision makes it unlawful for "any person, whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so."  N.J.S.A. 10:5-12(e).  However, the Third Circuit has concluded that only employees who have been delegated some degree of supervisory authority can be held personally liable under the NJLAD as "aiders and abettors."  Hurley, 174 F.3d at 129 ("Under New Jersey law, a nonsupervisory employee cannot be held liable as an aider and abettor for his own affirmative acts of harassment, because such affirmative acts do not substantially assist the employer in its wrong. . . . A supervisor, by contrast, may be liable as an aider and abettor for active harassment or knowing and willful inaction . . .").

Furthermore, the NJLAD also contains an anti-retaliation provision, which deems it unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts" which the Act prohibits.  N.J.S.A. 10:5-12(d). This provision therefore expressly contemplates direct liability

for individual supervisory employees.  Plaintiff alleges that individual Defendants Marty Wilt, John Grembowicz, Betty Ann Gardner and Steve Pawlak held a supervisory role over her.  (See Compl. at ¶¶ 10-14.)  Were a jury to conclude that Plaintiff's termination constituted unlawful retaliation, these Defendants could be held liable for their involvement, to the extent there was any, in that retaliatory conduct.  Accordingly, the Court will deny summary judgment to the extent that Plaintiff seeks to pursue a claim against Defendants Wilt, Grembowicz, Gardner and Pawlak for unlawful retaliation under the NJLAD as well.[6]

E.   Plaintiff's First Amendment Claim (Count X)

Count X of Plaintiff's Complaint alleges that Defendants violated 42 U.S.C. § 1983, in that Plaintiff was deprived of the privileges secured by the First Amendment, particularly the right to hold employment without infringement of her First Amendment rights to freedom of speech, assembly and association.

The Third Circuit has made clear that courts are to use a three-step analysis when analyzing a public employee's claim of retaliation for engaging in a protected activity.  See Green v. Philadelphia Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997). First, the Court must determine as a matter of law whether the activity in question was protected.  See Watters v. City of

---

[6]Because Plaintiff does not allege that Defendants McManus or Seybold held a supervisory role, the retaliation claim is not proper against these Defendants and must be dismissed.

<u>Philadelphia</u>, 55 F.3d 886, 892 (3d Cir. 1995).  Next, Plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.  <u>See</u> <u>Green</u>, 105 F.3d at 885.  Finally, the defendant may prevail by showing that the same action would have been taken regardless of the plaintiff's engagement in the protected activity.  <u>See</u> <u>id</u>.

For a public employee's speech to be protected speech, it "must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." <u>Watters</u>, 55 F.3d at 892.

A public employee's speech will be considered a "matter of public concern if it can be fairly considered as relating to any matter of political, social, or other concerns to the community." <u>See</u> <u>Green</u>, 105 F.3d at 886 (quoting <u>Connick v. Meyers</u>, 461 U.S. 138, 146 (1983)).  The court must determine that the public interest in this protected speech outweighs the employer's interest in promoting the efficiency of the public services it performs through its employees.  <u>Green</u>, 105 F.3d at 885.

Moreover, a claim of retaliation for the exercise of free speech also requires that the plaintiff prove, in addition to the fact that the plaintiff's speech activities were protected under the First Amendment, that his exercise of a protected right was a

substantial or motivating factor in defendant's adverse actions against him.  Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

Here, Plaintiff's speech may fairly be characterized as a protected activity; she spoke out on two issues of public concern: an alleged pattern of race and gender discrimination in place at UMDNJ and her co-worker's alleged mistreatment of medical patients.  Moreover, Plaintiff alleges that her termination on December 21, 2001 was motivated by Defendants' desire to retaliate against her for reporting incidents of alleged harassment by UMDNJ employees between December 1999 and June 2001.  On April 18, 2001, Aaron B. Sanders, AA/EEO Manager for UMDNJ, issued his final report on Plaintiff's complaints of sexual harassment and hostile work environment, arising from alleged gender and race discrimination.  (Plaintiff's Ex. J.)  In that report, Mr. Sanders determined that the allegations "appear[ed] to have merit."  (Id.)  This report is admissible for the limited purpose of providing context for Plaintiff's § 1983 claim as articulated in Count X, namely, to demonstrate plausible intent and to establish the requisite causal connection between Plaintiff's exercise of her rights and Defendants' alleged actions in response.  See Fed. R. Evid. 404(b).

Defendants argue that there is absolutely no causal connection between Plaintiff's termination and her act of

reporting discrimination some six months prior.  It is not, however, unreasonable, as Plaintiff points out, for a jury to find that a defendant like UMDNJ, familiar with discrimination law, might not immediately subject an employee to adverse employment action in retaliation for the employee's complaints of discrimination.  This is particularly so in light of Third Circuit precedent establishing that temporal proximity between the protected activity and the termination is sufficient to establish the requisite causal link.  Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (citing Jalil v. Avedel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).  The mere passage of time is not legally conclusive proof against retaliation, see Robinson v. SEPTA, 982 F.2d 892, 894 (3d Cir. 1993), and thus precludes this Court from entering summary judgment in favor of Defendants on Plaintiff's Count X.  Whether her termination was proximately caused by Defendants in retaliation for Plaintiff's exercise of First Amendment rights remains to be tried before the jury.

F.   Plaintiff's Request for Punitive Damages

Among the forms of relief requested, Plaintiff seeks an award of punitive damages in connection with her NJLAD claims. (Compl. at p. 21, ¶ (g); p. 25, ¶ (g).)  The legal standard for punitive damage claims is a matter of state law.  See Griffiths v. CIGNA Corp., 857 F. Supp. 399, 409-10 (E.D. Pa. 1994), aff'd, 60 F.3d 814 (3d Cir. 1995).  Defendants argue that Plaintiff's

claims against UMDNJ and its employees for punitive damages do not meet the egregious threshold set forth by the New Jersey Supreme Court.  Punitive damages, if available, are only available under the "heightened standard" of liability established in Lehmann v. Toys 'R Us, Inc., 626 A.2d 445 (N.J. 1993).

Punitive damages are awarded upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future.  Leigmgruber v. Claridge Assoc. Ltd., 375 A.2d 652, 654-55 (N.J. 1977).  Punitive damages are only warranted where the conduct consists of "intentional wrongdoing in the sense of an 'evil-minded act' or in an act accompanied by a wanton and willful disregard of the rights of another."  49 Prospect Street Tenants Ass'n v. Sheva Gardens, Inc., 547 A.2d 1134, 1149-50 (N.J. Super. Ct. App. Div. 1988) (quoting Nappe v. Anshelwitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1230 (N.J. 1984)).  Moreover, punitive damages are only available if the defendant's conduct has been particularly egregious.  Smith v. Wade, 461 U.S. 30 (1983); Restatement (Second) of Torts § 908(1) (1977).

Under the heightened proof standard, punitive damages may be awarded against a publicly entity – here, UMDNJ – "only if the conduct of managerial or supervisory government officials is particularly egregious and involves willful indifference or

33

actual participation." <u>Abbamont v. Piscataway Twp. Board of
Education</u>, 650 A.2d 958 (N.J. 1994).  The New Jersey Supreme
Court has reiterated the heightened punitive damage threshold for
NJLAD claims.  <u>Rendine v. Pantzer</u>, 661 A.2d 1202 (N.J. 1995).

Even giving the benefit of all favorable inferences from the
evidence to her, Plaintiff's claims do not rise to a sufficiently
egregious level so as to warrant an award of punitive damages
against UMDNJ.  The evidence could not reasonably support a
finding that UMDNJ acted with a high degree of conscious
disregard for the rights of others or engaged in "particularly
egregious" misconduct.  While Plaintiff contends that Defendant
Steve Pawlak's conduct was egregious, in that he denied Plaintiff
admittance to various EMS groups and that he advised Melanie
Layton to recant her account of the incidents of November 28,
2001 so that Plaintiff would be fired and Layton would remain
employed, Plaintiff has offered no proof, in the form of
deposition testimony or affidavit from Ms. Layton, to support her
contention that Steve Pawlak forced Ms. Layton to recant her
story.  These allegations are unsupported and inadmissible
hearsay and punitive damages are therefore inappropriate under
the applicable heightened standard.

### III.   CONCLUSION

Thus, for these reasons, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's discrimination and hostile work environment claim under the NJLAD.  Plaintiff's Title VII claims against all individual Defendants shall be dismissed.  Plaintiff's NJLAD claim against Defendants UMDNJ, Marty Wilt, John Grembowicz, Betty Ann Gardner and Steve Pawlak for retaliation, insofar as Plaintiff's termination is alleged to be the retaliatory act, survive Defendants' motion.  Likewise, Plaintiff's Title VII retaliation claim and national origin and sex discrimination claim as against UMDNJ may proceed as may Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983 against all Defendants.  The Court finds Plaintiff's claims for punitive damages to be unsupported and therefore summary judgment is granted for Defendants.  The accompanying Order is entered.


**      May 5, 2005      **                    **  s/ Jerome B. Simandle  **
DATE                                  JEROME B. SIMANDLE
                                      United States District Judge